**Carl I. D'ANGELO and Denise D'Angelo, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–82–878E.**

United States District Court, W.D. New York.

Nov. 16, 1983.

David Nelson, Attica, N.Y., for plaintiffs.

Joseph M. Guerra, III, Asst. U.S. Atty., Buffalo, N.Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiffs commenced this action September 28, 1982 pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., alleging medical malpractice and other tortious conduct by employees of defendant's Veterans' Administration ("VA") Hospital in Batavia, N.Y. Plaintiff Carl D'Angelo ("Carl") asserts that on May 20, 1981 defendant's agents negligently examined his physical condition and failed to diagnose and treat properly and to take proper precautions regarding his complaints of chest pain. He also asserts a claim for negligent hiring against defendant, alleging that incompetent physicians were employed at the hospital. Plaintiff Denise D'Angelo ("Denise") pleads a derivative cause of action based upon her husband's injuries allegedly caused by defendant's malfeasance.

Plaintiffs have moved for an order pursuant to Fed.R.Civ.P. rule 37(a) compelling defendant to permit inspection and copying of certain documents in the personnel files of three physicians at the VA Hospital. Defendant has cross-moved for an order staying this action pending a determination by the Secretary of Labor whether Carl's injuries are covered by the Federal Employees' Compensation Act ("FECA") or, alternatively for a protective order denying plaintiffs' discovery request.

The facts pertinent to the instant motions are as follow. In July 1974 Carl began his employment at the VA Medical Center in Batavia as a police officer. He was transferred to the position of maintenance mechanic in May 1976 and later worked as a mason at the Center from June 1978 to May 1981. Carl was also employed part-time as a police officer by the Village of Attica, N.Y. in 1981.

On April 25, 1981 Carl suffered chest pains after chasing a suspect in the course of his part-time police employment. He was hospitalized at Genesee Memorial Hospital from April 25 to May 1, 1981, was tested and was given an appointment to be examined by a cardiologist. On May 20, 1981 plaintiff went to the intensive care unit of the Batavia VA Hospital complaining of severe chest and arm pains. Carl, being a United States veteran, was entitled to treatment at the VA facilities. He advised the nurse at the intensive care unit that he believed he was having a heart attack. He then spoke with Dr. James Schmitt who, after being advised of Carl's complaints and previous hospitalization for chest pain, performed no further examination and allegedly told Carl that his condition was "in his head." Later that morning a Dr. Graziani spoke with Carl yet failed to perform any tests or a physical examination. Thereafter, a Dr. Lewandowski was advised by Carl of his condition and medical history; the physician prescribed Librium and gave Carl some sample bottles of Maalox and sent him home.

During the night of May 21, 1981 Carl was awakened by severe chest and arm pain and had to be rushed to the hospital. It was found that he was suffering from an acute myocardial infarction and that he was in extreme peril. He was hospitalized until June 12, 1981 and underwent a heart catherization at the VA Hospital June 30, 1981. He alleges that defendant's physicians' neglect on May 20, 1981 caused the subsequent heart attack and resultant permanent heart damage and total disability.

The primary issue before this Court is whether there exists a substantial question regarding the possibility of coverage of Carl's injuries by the Federal Employees' Compensation Act ("FECA"). The presence of a "substantial question" would require a stay of the action while plaintiffs pursued an administrative claim wherein the Secretary of Labor would determine whether FECA was applicable to their injuries. See Reep v. United States, 557 F.2d 204, 207–208 (9th Cir.1977); Bailey v. United States, Through Department of Army, 451 F.2d 963, 965 (5th Cir.1971). Such a procedure is mandated by the exclusive nature of the remedy provided by FECA which creates a total bar to any liability of the United States under the Federal Tort Claims Act if one was injured "while in the

performance of duty".[1]  *See* 5 U.S.C. §§ 8102(a), 8116(c); *Reep v. United States, supra,* at 207; *Somma v. United States,* 283 F.2d 149 (3d Cir.1960).

Although it is clear that neither the incidents of May 20, 1981 nor Carl's later heart attack on May 21, 1981 occurred while in the performance of his duties, defendant argues that a substantial question of FECA coverage exists as to whether Carl's "underlying heart condition" was caused in the performance of his duties. Defendant points to Carl's seven years of employment at the VA Center in occupations involving physical labor which could have caused the "heart condition". Plaintiffs' response that they have not alleged an original heart condition avoids the central issue as well as the case law which holds that, if in fact, such a heart condition did exist and was caused by Carl's federal employment activities, then his later injuries and the alleged malpractice would be covered by FECA. *Cf. Sanders v. United States,* 387 F.2d 142 (5th Cir.1967); *Balancio v. United States,* 267 F.2d 135 (2d Cir.1959); *Mohr v. United States,* 184 F.Supp. 80 (N.D.Cal.1960) (medical malpractice actions barred by FECA where original injuries sustained in performance of federal employment duties). However, the difficulty in this action of finding a "substantial question" of FECA applicability is due to the question presented regarding the existence *vel non* of the original heart condition. The Secretary would not only be required to find an underlying heart condition, but also that such condition was not hereditary and was caused by Carl's duties as an employee at the VA Medical Center from 1974 to 1981. The combined factors of Carl's government employment and his treatment at the VA Hospital on May 20, 1981 would not be sufficient to trigger FECA's exclusive remedies unless a prior covered injury had reasonably necessitated Carl's presence at the hospital where he was allegedly subjected to medical malpractice. *See United States v. Martinez,* 334 F.2d 728 (10th Cir. 1964); *Mohr v. United States, supra; Leahy v. United States,* 160 F.Supp. 519 (E.D.N.Y.1958).

The standards for finding a "substantial question" of FECA coverage have been broadly defined in order to permit an initial administrative determination of coverage. In *Concordia v. United States Postal Serv.,* 581 F.2d 439, 442 (5th Cir.1978), the court explained that in order "to avoid sending the case to the Secretary of Labor, we must essentially decide as a matter of law that, viewing all of the circumstances, the Secretary could not find FECA coverage of" the claim. Similarly, in *Reep v. United States, supra,* the court held that administrative remedies had to be pursued before commencing a federal action "unless [the] injuries are clearly not covered under FECA." 557 F.2d at 204 (citing *Joyce v. United States,* 474 F.2d 215, 219 (3d Cir.1973), and *Daniels-Lumley v. United States,* 306 F.2d 769, 771 (D.C.Cir.1962)). "A substantial question of FECA coverage exists unless it is 'certain that [the Secretary of Labor] would find no coverage.'" *DiPippa v. United States,* 687 F.2d 14, 16 (3d Cir.1982) (citing *Concordia v. United States, supra,* at 442–443).

In the instant action, had defendant presented any evidence regarding a prior heart condition the Court could not state with certainty that the Secretary of Labor would not reach a finding of FECA coverage. However, defendant has presented no more than the mere possibility of a prior heart condition and has submitted no proof that such condition, if in fact it existed, was produced during the years 1974 to 1981 due to Carl's employment at the VA Center. The remote possibility of a "substantial

---

1. 5 U.S.C. § 8102(a) provides in part:

"The United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty * * *."

5 U.S.C. § 8116(c) provides in part:

"The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee * * * [and] spouse * * *."

question" of coverage under FECA is all that is presented by defendant's motion for a stay of this action. The circumstances of this case are distinguishable from prior actions wherein the initial underlying injury was not questioned and the sole issue presented was whether later related injuries, such as ones caused by medical malpractice, were covered by the provisions of FECA. In *Somma v. United States, supra,* the plaintiff therein alleged medical malpractice by government physicians in failing to read x-rays properly and that such failure aggravated a prior non-service connected condition of tuberculosis. The court found that a substantial question of coverage existed. 283 F.2d at 150–151. More recently in *Scalia v. United States,* 475 F.Supp. 1040 (S.D.N.Y.1979), the issue facing the court was whether medical malpractice injuries committed during a treatment provided under FECA were compensable under the statute even though the malpractice allegedly consisted of a negligent failure to diagnose a non-work-related condition. The court found that the plaintiff's exclusive remedy was under FECA whether or not the underlying illness was work-related due to the critical fact that the alleged malpractice occurred during a FECA treatment. 475 F.Supp. at 1044.

■ In the case at bar, the rationales of these decisions cannot be invoked inasmuch as Carl did not receive treatment at the VA Center due to his government employment activities, but due solely to his status as a United States veteran. The initial finding of a job-related heart condition would be required prior to consideration of the question whether Carl's May 20, 1981 chest pains and the alleged subsequent malpractice are covered by FECA. Defendant's motion for a stay is denied without prejudice to a renewal of such motion with accompanying affidavits or documentation demonstrating the existence of an original heart condition plausibly related to Carl's work at the VA Center. The submission of such evidence would provide the basis for finding a "substantial question" of FECA coverage inasmuch as the Secretary could possibly find the later

chest pains and alleged negligent acts to be "delayed action" injuries. *See Concordia v. United States Postal Serv., supra,* at 441–442. A delayed action injury is one in which the originating cause of the injury is job-related but the manifestation of the injury occurs at a time and place remote from employment. Should defendant eventually present more than a hypothetical prior heart condition a stay of this action might become appropriate.

■ Plaintiffs' motion for an order compelling discovery of documents in the personnel files of the three physicians who spoke with Carl May 20, 1981, seeks information which is clearly relevant to plaintiffs' causes of action. The documents sought are therefore discoverable under Fed.R.Civ.P. rule 26(b)(1). *See Weahkee v. Norton,* 621 F.2d 1080, 1082 (10th Cir.1980) (personnel records discoverable if relevant in the absence of a privilege). Plaintiffs' third cause of action alleges that defendant negligently hired incompetent physicians and failed to ensure that the staff at the VA Center maintained the level of skill and knowledge required to provide adequate medical services to its patients. The personnel files of the three named physicians certainly might contain relevant evidence to support plaintiffs' claim. Defendant has failed to establish the existence of any privilege regarding these files or that plaintiffs' claim for negligent hiring or supervision comes within the exemption of the Federal Tort Claims Act for immune government action at the planning level of government operations. While defendant asserts that plaintiffs' request is overbroad in seeking the entire personnel files, plaintiffs' notice of motion has refined the original request to include: any and all records of patient complaints, disciplinary action, staff review of performance, malpractice actions (actual or threatened), job applications, review of job applications, performance evaluations, or other records however denominated showing the suitability or nonsuitability of these three doctors. This narrowing of the original request will permit defendant to refrain from disclosing irrele-

vant and private matters such as salary information.

For the reasons set forth, plaintiffs' motion for an Order directing defendant to permit the inspection and copying of the previously delineated documents in the personnel files of Doctors Schmitt, Graziani and Lewandowski is hereby ORDERED granted. Defendant's cross-motion for an Order denying such discovery is hereby ORDERED denied and defendant's cross-motion for a stay of this action is hereby ORDERED denied without prejudice to the renewal of such motion with the appropriate evidentiary support described above. Plaintiffs' request for an award of the costs of this motion is hereby ORDERED denied inasmuch as defendant's refusal to permit discovery of the personnel files was justifiable in view of its non-frivolous contention that the entire action should be stayed.