**Roger G. KING, et al.,**
**Plaintiffs–Appellants,**

v.

**IDAHO FUNERAL SERVICE ASSOCIA-**
**TION et al., Defendants–Appellees.**

Nos. 87–4041, 87–4388.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1988.

Decided Nov. 30, 1988.

Lloyd J. Walker, Twin Falls, Idaho, for plaintiffs-appellants.

Wes L. Scrivner, Mallea & Scrivner, Boise, Idaho, David W. Cantrill and Robert D. Lewis, Cantrill, Skinner, Sullivan & King; William A. Fuhrman, Eberle, Berlin, Kading, Turnbow & Gillespie; Robert C. Moody, Quane, Smith, Howard & Hull, Boise, Idaho, for defendants-appellees.

Before FARRIS and POOLE, Circuit Judges, and KELLEHER, District Judge.*

POOLE, Circuit Judge:

In No. 87–4041, Roger G. King, his wife Meri Ann King, and Gem State Casket Inc. (collectively "the Kings"), appeal from summary judgment entered against them and in favor of all defendants. In No. 87–4388, appellants' attorney appeals an order imposing sanctions against him personally pursuant to 28 U.S.C. § 1927 and Rule 11 of Fed.R.Civ.P. for filing and persisting in prosecuting meritless litigation. We affirm in both cases.

The magistrate, sitting by consent pursuant to 28 U.S.C. § 636(c) and Idaho Local Rule 4–101(i), conducted and entered final judgment in these proceedings.

The Kings are owners of Gem State Casket, Inc., an Idaho casket manufacturer. Defendants-appellees are the Idaho Funeral Service Association, its officers, Board of Trustees, Executive Secretary Kenneth Mallea, and some fifty individual funeral chapels which comprise the membership of the Association.

* The Honorable Robert J. Kelleher, Senior United States District Judge, Central District of California, sitting by designation.

The Kings accuse defendants of unlawfully causing the financial ruin of their business after September 1984. Specifically, their Second Amended Complaint asserted three claims for relief. First, they claim that defendants conspired to boycott their casket business with the intent of driving them out of business in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; second, that defendants conspired to fix prices in order to maintain a monopoly on retail casket sales, in violation of Section 2 of the Sherman Act; and finally, that defendants tortiously interfered with plaintiffs' casket contracts with wholesale distributors in contravention of Idaho state law.

We review a grant of summary judgment *de novo*. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Viewing the evidence in the light most favorable to the Kings, *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986), it is clear that plaintiffs failed to adduce evidentiary support sufficient to establish the existence of a genuine issue of material fact as to each essential element of their claims.

## THE MERITS

The record shows that Mallea, on behalf of the Association, and certain of the Association members, believed that the Kings were selling caskets at retail for which they did not have the required license. Mallea and others took action to bring this information to the attention of the Idaho licensing enforcement officials and to the public. The court ruled that even if this activity constituted an "agreement" among the Association members, such conduct was clearly protected by the *Noerr–Pennington* Doctrine. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); and *California Motor Transport*

*Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Such actions are not made illegal because of the possible existence of underlying anticompetitive motives. *Eastern Railroad Presidents Conference,* 365 U.S. at 139–40, 81 S.Ct. at 530–31. Counsel for plaintiffs seemed unmindful of the scope of the foregoing authorities and persisted in pursuing his claim despite its unavailability.

Further, plaintiffs presented no evidence tending to demonstrate the existence of a boycott against their casket business other than inadmissible hearsay allegations offered by Roger King during his deposition. In fact, deposition testimony of the three principal wholesalers whom plaintiffs claimed also to have acknowledged the existence of a conspiracy and to have themselves been targets thereof, directly controverted King's assertions. In addition, plaintiffs admit that these same wholesalers attempted to purchase caskets from plaintiffs as late as November 1984, but were refused because plaintiffs were unable to fill their orders. The undisputed inference from this chain of events is that there was no boycott.

A Section I claim also requires a showing of actual injury to competition. *Earnest W. Hahn, Inc. v. Codding,* 615 F.2d 830 (9th Cir.1980). In this respect, the record clearly reflects that plaintiffs' casket sales constantly increased throughout the entire period the Kings were in business, negating any conclusion of injury caused by defendants.

■ Nor did plaintiffs make any showing in support of their Section 2 claim that defendants fixed prices. Plaintiffs depended entirely upon the bare conclusions of Roger King, unsupported by any reasonable, factual or legal basis. The party opposing summary judgment may not rely on mere conclusory allegations, but must set forth specific facts demonstrating the existence of a genuine issue of material fact for trial. *Mosher v. Saalfeld,* 589 F.2d 438, 442 (9th Cir.1979). Since plaintiffs failed to

meet this requirement with respect to the essential elements of a Section 2 claim, summary judgment was proper on that claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986).

■ Plaintiffs did not address their state law claim in their opening brief although they had contended that the Idaho statute in question was invalid because it conflicted with federal antitrust laws. In the absence of special circumstances, we will not ordinarily consider on appeal issues not specifically raised and presented in appellant's opening brief. *International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir.1985). We have found no such special circumstances surrounding appellant's omission of this issue. Accordingly, we treat plaintiffs' third claim as waived.

### SANCTIONS

■ After the ruling granting summary judgment, five law firms representing the dismissed defendants—of which there were in excess of 60—requested sanctions against the plaintiffs and their counsel on the grounds that the claims presented were frivolous, in violation of Rule 11 of the Federal Rules of Civil Procedure, and also in violation of 28 U.S.C. § 1927. The trial court found that sanctions should be awarded pursuant to Fed.R.Civ.P. 11,[1] but only as against plaintiffs' counsel, and further, limited the amount to $2,000 for each of the five firms. Counsel for plaintiffs individually appeals the award against him.

We first set forth the title and provisions of Rule 11, edited for convenience:

RULE 11. Signing of Pleadings, Motions and Other Papers; Sanctions

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A

---

1. Although the motions for sanctions included reference to 28 U.S.C. § 1927, the findings and conclusions by the magistrate are those appropriate under Rule 11. Consequently, we confine this analysis and discussion to that provision only.

party who is not represented by an attorney shall sign the party's pleading, motion or other paper and state the party's address. * * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(As amended Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 2, 1987, eff. Aug. 1, 1987.)

In a separate memorandum order, the trial court discussed the standard for sanctions contained in Fed.R.Civ.P. 11. Citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir.1986), the magistrate observed that the signature requirement of the rule " * * * is to fix responsibility upon a specific person for those matters that are the subject of the certificate." *Id.* at 830. In that opinion, we fixed the standard for imposing sanction for frivolous filings as follows:

[T]he subjective intent of the pleader * * * to file a meritorious document is of no moment. The standard is reasonableness. The "reasonable man" against which conduct is tested is a competent attorney * * *

The pleader, at a minimum, must have a "good faith argument" for his or her view of what the law is, or should be. A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after "reasonable inquiry."

*Id.* 780 F.2d at 830–31.

We have most recently said:

"Rule 11 applies only to the initial signing of a 'pleading, motion, or other paper.' Limiting the application of Rule 11 to testing the attorney's conduct at the time a paper is signed is virtually mandated by the plain language of the rule." *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir.1986), *cert. denied* [480 U.S. 918], 107 S.Ct. 1373 [94 L.Ed.2d 689] (1987). Any sanctions for actions later in a proceeding must be based on 28 U.S.C. § 1927, which requires a finding that "counsel has acted 'recklessly or in bad faith.'" *In Re Akros Installations, Inc.*, 834 F.2d 1526, 1532 (9th Cir.1987) (quoting *United States v. Associated Convalescent Enterprises*, 766 F.2d 1342, 1346 (9th Cir.1985); *see Roadway Express v. Piper*, 447 U.S. 752, 757 [100 S.Ct. 2455, 2459, 65 L.Ed.2d 488] (1980); *Zaldivar*, 780 F.2d at 829–32; *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1010 (2d Cir.1986.) * * *

*Cunningham v. County of Los Angeles*, 859 F.2d 705, 714 (9th Cir.1988).

In *Zaldivar* we also set forth the appropriate standard for reviewing the imposition of sanctions by a trial court:

If the facts relied upon by the district court to establish a violation of the Rule are disputed on appeal, we review the factual determinations of the district court under a clearly erroneous standard. If the legal conclusion of the district court that the facts constitute a violation of the Rule is disputed, we review that legal conclusion *de novo*. Finally, if the appropriateness of the sanction imposed is challenged, we review the sanction under an abuse of discretion standard.

*Zaldivar*, 780 F.2d at 828. (footnote omitted.)

The magistrate concluded that sanctions were in order because of plaintiffs' counsel's failure to conduct a reasonable inquiry before signing and filing the complaint. He observed that "counsel has come for-

ward with no evidence which demonstrates that he conducted an inquiry of any type before filing the original complaint in this matter. Counsel did not even bother to call on, telephone, or write the three wholesalers who were the subject of plaintiffs' boycott allegations until after the First Amend[ed] Complaint was filed." *Memorandum Opinion and Order,* November 17, 1987 at 7. He also added:

> Furthermore, plaintiffs persisted in suing all of the individual members of [the Association] even though they were advised prior to filing the Amended Complaint that mere membership in an association is insufficient to impose liability under the Sherman Anti–Trust Act. *Kline v. Coldwell, Banker & Company,* 508 F.2d 226 (9th Cir.1974). Plaintiffs never attempted to argue that *Kline* should be extended to permit liability in the present case. Instead, plaintiffs maintained that *Kline* held that the failure of association members to disassociate themselves from the association was sufficient to impose liability. The plaintiffs clearly have misconstrued *Kline.* Thus plaintiffs could not have had a good faith view of what the law was.

*Id.* at 9.

The findings by the trial court were not clearly erroneous and we agree that a violation of Rule 11 was the proper conclusion. Considering the strength of the finding of lack of reasonable inquiry, and its consequence upon the court and upon the large number of persons needlessly brought in as parties, we believe the sanctions awarded reflected care as well as compassion by Magistrate Williams. We find no abuse of discretion. The judgment in both causes are AFFIRMED.

Costs will be awarded to appellees. We decline to impose attorney fees on this appeal.